IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GAIL CARLSON, ) | |
| ) | |
| Plaintiff, ) | No. _____ |
| ) | |
| vs. ) | Judge _____ |
| ) | |
| PEI WEI ASIAN DINER, INC. ) | Jury Demand |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff hereby files this Complaint against Pei Wei Asian Diner, LLC f/k/a Pei Wei Asian Diner, Inc. ("Pei Wei" or "Defendant") and respectfully alleges as follows:

### JURISDICTIONAL FACTS

1. This action is brought to remedy discrimination on the basis of sex in the terms, conditions and privileges of employment and to remedy retaliation against an employee for activity protected under Title VII.

2. Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to Title VII, particularly 42 U.S.C. § 2000e (f) and (g).

3. Plaintiff Gail Carlson ("Ms. Carlson" or "Plaintiff") is a female citizen and resident of Ohio.

4. At times material to her Complaint, she was employed by Defendant in Williamson County and/or Davidson County, Tennessee.

5. Defendant is a foreign corporation duly licensed in the State of Tennessee whose principal place of business is 7676 E. Pinnacle Peak Road, Scottsdale, Arizona 85255-3404. Its

1
Case 3:13-cv-00063   Document 1   Filed 01/28/13   Page 1 of 7 PageID #: 1

registered agent for service of process is National Registered Agents, Inc. 2300 Hillsboro Road, Suite 305, Nashville, TN 37212-4927.

6. Defendant is an employer as defined in the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. (as amended 1972)("Title VII").

7. Ms. Carlson filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On or about October 31, 2012, Ms. Carlson received a "Notice of Right to Sue" from the EEOC. The Charge of Discrimination and the "Notice of Right to Sue" are attached hereto as Exhibit A and are incorporated herein by reference. All administrative prerequisites have been met.

8. Jurisdiction and venue is proper in the United States District Court for the Middle District of Tennessee, Nashville Division.

## FACTS

9. Plaintiff adopts verbatim paragraphs 1-8 as though fully set out herein.

10. Ms. Carlson was employed by the Defendant at all times material to this Complaint. Defendant hired Ms. Carlson in or about February 2009 to work as a manager in training in its Dublin, Ohio restaurant. After completing the training program in about April 2009, she began working in Defendant's Easton, Ohio restaurant as an Assistant Manager. In or about September 2009, Ms. Carlson transferred to the Nashville, Tennessee (Green Hills) Restaurant. In or about August 2010, Ms. Carlson transferred to Defendant's Brentwood, Tennessee restaurant.

11. In or about October 2010, De'Sean Jefferson ("Jefferson") began working at the Brentwood restaurant as the General Manager and Ms. Carlson's direct supervisor. Shortly after arriving as the General Manager, Jefferson began making sexually explicit and inappropriate

comments and gestures directed towards Ms. Carlson and otherwise harassing Ms. Carlson because of sex. Jefferson's sexual harassment was severe, pervasive and unwelcome. His comments and behavior had the effect of sexualizing Ms. Carlson and the workplace, causing her embarrassment, humiliation, anxiety, and stress that interfered with the terms and conditions of her employment.

12. Ms. Carlson suffered tangible adverse job actions as a result of the sexual harassment, discrimination and retaliation, including, being denied requested days off, being forced to take unpaid medical leave, being constructively discharged and also being subjected to other discriminatory treatment that adversely affected the terms and conditions of her employment.

13. Once the harassment began, Jefferson made inappropriate comments to and otherwise harassed Ms. Carlson almost every day that they worked together. Examples of inappropriate comments, include, without limitation, Jefferson stating to Ms. Carlson:

   a. "It would only take one Long Island Iced Tea for you to have sex with me. Your life would never be the same after you had sex with me." [and similar comments];

   b. "I am going to personally find someone to have sex with you so you will stop being such a b[****]." [and similar comments];

   c. "I will not give you the days you request off unless you are going to use them to have sex with someone." [and similar comments];

   d. "I have a friend that I might be able to convince to have sex with you. Maybe if you turn the lights out he will have sex with you. It is just what you need." [and similar comments].

14. Ms. Carlson unequivocally and repeatedly informed Jefferson that she was not interested in having sex with him or anyone else. She also repeatedly asked Jefferson to stop making inappropriate sexual comments to her. Nevertheless, Jefferson's harassment persisted.

15. After Ms. Carlson initially informed Jefferson that she would not have sex with him, he began to criticize her appearance and bully her. He made repeated comments and gestures to indicate that she was unattractive and that no one would want to have sex with her but that she needed sex. Despite Ms. Carlson asking that he stop, Jefferson's harassment persisted.

16. After months of suffering from severe and pervasive harassment and discrimination, Ms. Carlson requested a meeting with Joshua Lee ("Lee") so that she could report the inappropriate and unlawful behavior of Jefferson. Lee informed Ms. Carlson that he could not meet with her because he was going out of town. At the time she requested the meeting with Lee, Ms. Carlson recalls only having received one "write up" during her tenure with Pei Wei. This write up was by Justin Pendergrass ("Pendergrass") and involved the restaurant not being as organized as it should have been when Clay McAfee came to visit.

17. Ms. Carlson reported the harassment to Defendant through their "help line."

18. Prior to the time Lee met with Ms. Carlson, she had been in an argument with Jefferson for which Jefferson gave her a "write up." When she met with Lee, as planned, she informed him that Jefferson had been making inappropriate comments and behavior amounting to sexual harassment and discrimination. Jefferson's behavior violated the company sexual harassment policy.

19. Ms. Carlson also reported that Jefferson was engaged in a sexual relationship with an hourly employee who worked under Jefferson in violation of company policy.

20. After Ms. Carlson reported Jefferson, he told her that continuing to work in Brentwood was not an option and that he would not schedule her for any shifts at that location. Defendant conducted an investigation but failed to interview all the witnesses that Ms. Carlson advised had knowledge of Jefferson's unlawful behavior.

21. Following the investigation, Jefferson was not punished for sexually harassing Ms. Carlson and was not punished for having an inappropriate sexual relationship with an hourly employee under his supervision in violation of company policy. Ms. Carlson was transferred to the Green Hills restaurant in or about late August or early September 2011.

22. Ms. Carlson reported to General Manager Pendergrass at the Green Hills restaurant. Pendergrass had obviously learned about Ms. Carlson's sexual harassment complaints because he treated her differently than other employees and otherwise engaged in conduct that would dissuade a reasonable employee from reporting sexual harassment. The harassment, discrimination and retaliation was so sever and pervasive that it was objectively and subjectively reasonable for her to terminate her employment. In other words, Ms. Carlson was constructively discharged.

## FIRST CAUSE OF ACTION – TITLE VII

23. Plaintiff adopts verbatim paragraphs 1-22 as though fully set out herein.

24. Plaintiff sues the Defendant under Title VII for discrimination on the basis of sex, including quid pro quo and hostile work environment sexual harassment and retaliation. She sues the defendants for all remedies available under Title VII, as well as any other legal and equitable relief that may be available.

25. Defendant has discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex in violation of Title VII.

26. Plaintiff is now suffering and will continue to suffer irreparable injury, monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## SECOND CAUSE OF ACTION – RETALIATION

27. Plaintiff adopts verbatim paragraphs 1-26 as though fully set out herein.

28. Defendant has retaliated against Plaintiff and has denied her opportunities for employment on the basis of her having complained of sexual harassment and discrimination, in violation of Title VII.

29. Plaintiff is now suffering and will continue to suffer irreparable injury, monetary damages and damages for mental anguish and humiliation as a result of Defendant's discriminatory practices unless and until this Court grants relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that:

1. Process issue against the Defendant, requiring it to answer within the time period specified by law;

2. A jury be impaneled to hear this cause of action at trial;

3. The Court enter a judgment:

    (a) Declaring that the acts and practices complained of herein are in violation of Title VII;

    (b) Enjoining and permanently restraining these violations of Title VII;

    (c) Directing defendants to take affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect plaintiff's employment opportunities;

(d) Directing defendants to place Plaintiff in the position that she would have occupied but for defendants' discriminatory and retaliatory treatment of her, and make her whole for all earnings she would have received but for defendants' discriminatory and retaliatory treatment, including, but not limited to, reinstatement and/or front pay, back wages, bonuses, pension, and other lost benefits;

(e) Awarding Plaintiff compensatory damages and punitive damages in amounts to be determined by the jury;

(f) Awarding plaintiff the costs of this action together with reasonable attorneys' fees, as provided by §706(k) of Title VII, 42 U.S.C. § 2000e-6(k);

(g) Directing the defendants to pay Plaintiff compensatory damages and damages for her mental anguish and humiliation; and,

(h) Granting such other and further relief as this Court deems necessary and proper.

January 28, 2013

Respectfully submitted,

Charles P. Yezbak, III (#18965)
yezbak@yezbaklaw.com
**Melody Fowler-Green (#23266)**
mel@yezbaklaw.com

*Attorneys for Plaintiff*

2002 Richard Jones Road, Suite B-200
Nashville, Tennessee 37215
(615) 250-2000
(615) 250-2020 Facsimile